IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 13 |
| JAMES A. JACOBY and ) | |
| SUSAN KAY JACOBY, ) | Bankruptcy No. 10-02844 |
| ) | |
| Debtors. ) | |

**ORDER RE: OBJECTIONS TO CONFIRMATION OF DEBTORS' FIRST MODIFIED PLAN**

This matter came before the Court on Objections by the United States Trustee and the Chapter 13 Trustee to the Confirmation of Debtors' First Modified Plan. The Court conducted a confirmation hearing on May 18, 2011. Kevin Ahrenholz represented Debtors. John Schmillen represented the United States Trustee. Carol Dunbar represented herself as the Chapter 13 Trustee. The Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

**STATEMENT OF THE CASE**

The U.S. Trustee and the Chapter 13 Trustee both objected to the confirmation of Debtors' First Modified Chapter 13 Plan. The U.S. Trustee argued that Debtors' proposed payment of a loan secured by a Harley Davidson motorcycle is not a reasonable and necessary expense. The Chapter 13 Trustee joined in that

1

objection. The Court agrees and finds that the Debtors' unsecured creditors should not be required to subsidize the use of the motorcycle where Debtors also wish to retain two other serviceable motor vehicles. The Court sustains the objections and denies confirmation of Debtors' Plan.

## FACTS AND PARTIES' ARGUMENTS

This Court approved Debtors' Motion to convert their case from Chapter 7 to Chapter 13 on December 28, 2010. In their Chapter 13 Plan, Debtors propose to make three monthly payments to Public Employees Credit Union. Each payment is for a loan secured by a motor vehicle: a 2004 Ford Taurus, a 2000 Ford Ranger pickup, and a 2008 Harley Davidson Softail motorcycle. During the pendency of this case, Debtors have paid off the loan secured by the Ford Ranger pickup.

The U.S. Trustee objects to Debtors' proposed payment of $257.00 per month to the Credit Union for the motorcycle loan. Debtors have no equity in the motorcycle, and the loan payments will continue for roughly four more years. The Chapter 13 Trustee joins the objection to this proposed payment.

Debtors argue that retaining the motorcycle makes economic sense. Mr. Jacoby works part time at a church to supplement his retirement income. He testified that he needs a vehicle to travel roughly 75 miles per week to and from work. He

purchased the motorcycle in March of 2009. He is a motorcycle enthusiast and can make his own repairs to the motorcycle. He estimated the motorcycle gets 30 miles per gallon, whereas the pickup (when running) gets roughly 13-15 miles per gallon. If allowed to retain the motorcycle, Debtors plan to share the Ford Taurus or have Mr. Jacoby request rides from others from late November through March.

Debtors' Ford Ranger, which they also seek to retain under the Plan, is in need of roughly $1,000 in repairs. Repairing two items would return the pickup to good working condition. Debtors do not currently have money available to repair the pickup. They would need to modify their Plan to free up funds.

## CONCLUSIONS OF LAW

The U.S. Trustee and Chapter 13 Trustee both object to the reasonableness and necessity of the payment for the motorcycle. The objections trigger the requirements of § 1325(b)(1), which states:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that **all of the debtor's projected disposable income** to be received in the applicable commitment period beginning on the date that the first

3

>payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Id. (emphasis added). The Supreme Court recently summarized these requirements as follows:

>If an unsecured creditor or the bankruptcy trustee objects to confirmation, § 1325(b)(1) requires the debtor either to pay unsecured creditors in full or to pay all "projected disposable income" to be received by the debtor over the duration of the plan.

Hamilton v. Lanning, ___ U.S. ___, 130 S. Ct. 2464, 2469 (2010). Debtors' Plan does not propose full repayment of unsecured creditors. As a result, the Court may not confirm the Plan under § 1325(b)(1)(A). The issue is whether the Plan is confirmable under § 1325(b)(1)(B). That section provides that the plan may be confirmed over objections if all of Debtors' "projected disposable income" goes to payments to unsecured creditors.

The Bankruptcy Code does not define "**projected** disposable income." BAPCPA left the term "projected disposable income" undefined, but did specify in some detail how "disposable income" is to be calculated. See Hamilton, 130 S. Ct. at 2469; See also Coop v. Frederickson (In re Frederickson), 545 F.3d 652, 658 (8th Cir. 2008).

>"Disposable income" is now defined as the "**current monthly income** received by the debtor" less **amounts reasonably necessary to be expended** for the debtor's

4

> maintenance and support, for qualifying charitable contributions, and for business expenditures.

Hamilton, 130 S. Ct. at 2469 (citing 11 U.S.C. § 1325(b)(2)) (emphasis added).

> "Current monthly income," in turn, is calculated by averaging the debtor's monthly income during what the parties refer to as the 6-month look-back period, which generally consists of the six full months preceding the filing of the bankruptcy petition.

Hamilton, 130 S. Ct. at 2470 (citing 11 U.S.C. § 101(10A)); See also Frederickson, 545 F.3d at 655 n.1.

> The phrase "**amounts reasonably necessary to be expended**" in § 1325(b)(2) is also newly defined. For a debtor whose income is below the median for his or her State, the phrase includes the full amount needed for "maintenance or support," see § 1325(b)(2)(A)(i), but for a debtor with income that exceeds the state median, only certain specified expenses are included.

Hamilton, 130 S. Ct. at 2470 (emphasis added).

In this case, Debtors have current monthly income that is above the median family income for a household of two in the State of Iowa. As a result, the Court looks to § 1325(b)(3) to determine their disposable income. Section 1325(b)(3) directs the Court to subtract from current monthly income "amounts reasonably necessary to be expended" in accordance with § 707(b)(2)(A)–(B). "The formula for above-median-income debtors is known as the 'means test' and is reflected in a

5

schedule. . . ." Hamilton, 130 S. Ct. at 2470 n.2; In re Hicks, slip op. No. 10–41855–JJR–13, 2011 WL 2414419, at *3 (Bankr. N.D. Ala. June 15, 2011).

Even after making the § 707 "means test" adjustments to calculate disposable income, disposable income does not automatically equate with "**projected** disposable income" to pay unsecured creditors in a Chapter 13 plan. "[A] distinction can be drawn between a debtor's 'disposable income,' which is calculated solely on the basis of historical numbers and regional averages, and a debtor's 'projected disposable income,' which necessarily contemplates a forward-looking number." Frederickson, 545 F.3d at 659 (adopting forward-looking approach); see also Hamilton, 130 S. Ct. at 2475–76. Debtor's calculation of disposable income using Form 22C "is a starting point for determining the debtor's 'projected disposable income' . . ." Frederickson, 545 F.3d at 659.

"Congress did not amend the term 'projected disposable income' in 2005, and pre-BAPCPA bankruptcy practice reflected a widely acknowledged and well-documented view that courts may take into account known or virtually certain changes to debtors' income or expenses when projecting disposable income." Hamilton, 130 S. Ct. at 2473–74. In determining a debtor's projected disposable income, a court must have the discretion "to reach a reality-based determination of a debtor's capabilities to repay creditors." Frederickson, 545 F.3d at 659 (citing In re

6

Kibbe, 361 B.R. 302, 315 (B.A.P. 1st Cir. 2007) (per curiam). Put another way, "the word 'projected' cannot be meaningless *given that* the Form 22C computation [of disposable income] *does not discern* between secured debts for *necessities* and secured debts for *luxuries*." In re LaSota, 351 B.R. 56, 62 (Bankr. W.D.N.Y. 2006).

Bankruptcy courts have struggled, both mightily and thoughtfully, with deciding the specific question presented here — which items debtors may keep and/or pay for as expenses that ultimately subtract from the distribution to unsecured creditors under their Chapter 13 plan. There is even some debate about the proper method for analyzing the issue. Some courts have used the projected disposable income test of § 1325(b)(1)(B). Some have used the "good faith" test of § 1325(a)(3). Some have used both. The arguments here by the Trustee and United State Trustee raise only reasonably necessary expense issues.

While the "good faith" test is not specifically part of this case, it still has bearing on this Court's analysis. Questions of good faith are, by necessity, intertwined with the "reasonably necessary expense" inquiry in cases like this. One court discussed this relationship between these concepts at length:

> [A]lmost every Chapter 13 Plan that proposes less than full payment to creditors is about *future* choices, not *past* choices or misfortunes . . . . Whether a Chapter 13 debtor currently spends all the way up to the Form 22C allowances or does not do so, a Chapter 13 filing that proposes to discharge any portion of unsecured debt is

7

> *always* a choice, and is *always* about choices for the next few years.
>
> Some of those choices are "proper" or "worthy" under *anyone's* set of moral values, such as saving a modest house from foreclosure because a basic rental unit that would safely house the debtor's family would be more expensive than curing mortgage defaults and maintaining ongoing mortgage payments . . . . Other choices might not be "proper" or "worthy" under *someone's* set of moral values, such as saving a $10,000 Harley Davidson motorcycle that is the pride and joy of the debtor's life.
>
> Sometimes the Court says "No, that choice is not fair to your creditors. It is not 'necessary' or 'reasonable.' It simply asks for too many advantages from the Chapter 13 process at your creditors' expense," and therefore is not a "good faith Plan."

LaSota, 351 B.R. at 58–59.

The court continued the analysis noting the difficulties inherent in the analysis:

> There is facial appeal to the notion that a debtor who chooses not to spend as much on a house or car as another debtor of comparable income should not have to pay more to unsecured creditors . . . than other debtor. That other debtor is permitted to use income to build equity in a more expensive home, perhaps, so why should not the debtor who is not driven by the acquisition of "things" be permitted to build a bank account? . . .
>
> BAPCPA displaced the earlier view that "projected disposable income" is indistinguishable from what, in common parlance, is "excess post-petition income." . . . An expense item that was not "necessary" was "excess" or

8

> "discretionary" or a "luxury." Therefore, a debtor could not reduce the payout to unsecured creditors in order to support the debt on a nice $10,000 sailboat that the debtor enjoys racing in a fleet on summer evenings off Buffalo on Lake Erie. Even if the "good faith" test would not require surrender of the sailboat to repossession (or instead a tightening up of other expenses to offset the boat payments), then "*projected disposable income*" would so require, prior to BAPCPA. Has BAPCPA changed this result by defining "disposable income" in such a way as to turn many *"discretionary" expenses* into "*non*-disposable *income*."

LaSota, 351 B.R. at 59–60.

The court then looked at the particular case before it, dealing with debtors' attempt to add to their savings account while paying creditors less than 100%, and observed:

> Pursuit of a growing bank account is certainly more highly recommended than pursuit of a finer house or car, but it is still "discretionary" if one is seeking to do so while seeking to discharge unsecured debt in bankruptcy (or even to stretch the debt repayment out beyond the stated terms). But Chapter 13 recognizes a vast panoply of forces that shape various debtors' lifestyles and life choices. Bankruptcy courts do not properly sit in moral judgment of how debtors of comparable income prioritize their lifestyles, and consequently prioritize their expenses, *within the same income bracket*. So why should not a Bankruptcy Court apply a moral judgment that equates one debtor's decision not to spend on "things" and to put the excess in the bank, with other debtors' decision to spend more of his or her income on a house or car when both are attempting to discharge the same amount of debt?

9

> . . .
>
> [T]o sit as a Chapter 13 Judge against the background of the panoply of the forces that shape debtors' choices does not permit the Judge to substitute his or her value judgments for those of the debtor. Instead, such judges do "rough justice," and need every statutory tool at their disposal to achieve it on a program-wide basis, though they might not achieve justice in every case. Congress' retention of the "good faith" test, and the presence of the word "projected," modifying the phrase "disposable income," are the key tools. BAPCPA did not take those away.
>
> . . .
>
> Contrary to some other authority, this writer finds that BAPCPA does not command that there be no inquiry into such matters. Not just "good faith" is still required, but "projected" is still a meaningful word. Indeed, *"projected" may necessitate immediate change*, if the debtor is to win Confirmation.

LaSota, 351 B.R. at 60–62.

The court concluded its analysis, noting that the concepts of good faith and projected disposable income are often so closely aligned that distinguishing between them is immaterial in some cases:

> Along similar lines are cases in which substantial payments on secured debt are being made in order to preserve a *luxury* item, such as a classic car or motorcycle, or a timeshare, or other vacation property. Even BAPCPA continues to reference "amounts reasonably expended . . . ." Consequently, the word "projected" cannot be meaningless *given that* the Form 22C computation *does*

> *not discern* between secured debts for *necessities* and secured debts for *luxuries*. Rather, "Projected disposable income," properly applied, often requires surrender of those luxuries to repossession or foreclosure, if confirmation of a less–than–100% Plan is to be won.
>
> Whether it is the application of the word "projected" alone or the application of the "good faith" requirement alone that requires such a result is of no practical moment.

LaSota, 351 B.R. at 62–63.

This Court applies a similar analysis here. While the "good faith" analysis is not specifically argued here, it does, at least to a degree, "inform" the inquiry about "reasonableness" of expenditures.

Here, the question is whether Debtors' motorcycle loan payment is an "amount reasonably necessary to be expended" such that it should reduce Debtors' disposable income available to creditors under their Plan. Most courts facing the reasonably necessary expense issue in cases like this have regarded a motorcycle as a non-essential item — not a reasonably necessary expenditure — where a Chapter 13 debtor seeks to retain it in addition to keeping one or more cars. See, e.g., Hicks, 2011 WL 2414419 at *3 (loan payment secured by motorcycle not reasonably necessary in addition to debtor's other car); In re Warren, slip op. No. 10-40865-JDP, 2010 WL 5174470, at *6 (Bankr. D. Idaho 2010) (questioning whether debtors were engaged in "meaningful belt-tightening" where they proposed

11

to make payments on two vehicles and two motorcycles); In re McDonald 437 B.R. 278 (Bankr. S.D. Ohio 2010) (confirmation was denied where debtors proposed to retain their two cars and a motorcycle); In re Allawas, C/A No. 07–06058–HB, slip op. (Bankr. D.S.C. Mar. 3, 2008) (loan payment secured by motorcycle not reasonably necessary in addition to debtor's other car). In LaSota, the court described its approach on this exact issue in previous cases: "This writer has sometimes said, 'Give up the Harley Davidson and increase your payment to your credit card debts and to your old rent defaults to your previous landlady and then you can have a Plan confirmed that will discharge the rest.'" 351 B.R. at 59.

This Court has taken up a similar question of reasonable and necessary expenditures in dealing with reaffirmation agreements in Chapter 7 cases. When a Chapter 7 debtor reaffirms a debt secured by a luxury or non-necessary item, the court provides extra scrutiny. In re Bartz, slip op. No. 10-01897, 2011 WL 671991 at *4 (Bankr. N.D. Iowa, Feb. 17, 2011). The reaffirming debtor is choosing to repay some debts — for non-essential luxury items — and discharge others. In the Chapter 13 context, when a debtor discharges some unsecured debt under the Plan and simultaneously makes payments for a non-essential or luxury item, the debtor is redirecting potential payments to unsecured creditors for his or her own purposes to keep that item. The statutory considerations in both Chapter 7 reaffirmations and

Chapter 13 confirmations are different, but the underlying philosophy is the same. By invoking the protections of the Bankruptcy Code, the Court in return expects a debtor to limit what it carries forward and continues to pay for only those items that are necessary. Where a debtor seeks to retain an item that "acquire[s] a luxury component by reason of [its] unusual character and [or] cost", the Court may well have to disapprove such a request. Bartz at *5 (quoting In re Boyle, 412 B.R. 108, 113 (Bankr. W.D.N.Y. 2009)).

## DISCUSSION

On the limited question presented, the record shows that the motorcycle payment is not a "reasonably necessary expense." Debtors' Plan proposes to keep two other vehicles. One is the working car driven by Mrs. Jacoby. The other is a pickup that will require approximately $1,000 in repairs to get in working condition. Debtors presented evidence that they did not have funds available to fix the pickup, yet still sought to retain and pay for the Harley Davidson instead of using that money to pay for pickup repairs.

Mr. Jacoby testified that the motorcycle loan will continue for approximately four more years. At $257 per month, the total remaining payments for the

motorcycle are approximately $12,336.00. That amount could easily be re-allocated to fix and maintain the pickup.

Debtors also presented evidence about cost-saving offsets provided by using the motorcycle. Mr. Jacoby testified that the motorcycle gets roughly 30 miles per gallon, whereas the pickup gets between 13–15 miles per gallon. Mr. Jacoby's round-trip commute to work is approximately 75 miles per week. Using the motorcycle translates to a savings of approximately 4.41 gallons of fuel per week. Assuming that Debtor could drive his motorcycle to work nine months of the year, this translates to a savings of approximately 170.74 gallons of fuel per year. Even assuming that gas costs would reach $4.00/gallon, this fuel savings translates to $682/year, or $3,410 over the five-year commitment period of the Plan.

Debtors did not put on evidence about specific savings for vehicle maintenance by Mr. Jacoby doing motorcycle repairs — as opposed to pickup truck repair he could not do.   Even if the Court were to assume that Debtor would save $2,000 by maintaining the motorcycle himself, and he would not have to make the $1,000 cost to repair their pickup, the full maintenance savings would be $3,000. Adding this to the projected fuel savings of $3,410, the total motorcycle "savings" was $6,410. This total is 52% of the $12,336 in remaining motorcycle loan payments. In other words, even with a generous view of the savings from using the

14

motorcycle, it would still cost Debtors' unsecured creditors approximately $5,926.00.

The Court appreciates Debtors' attempts to demonstrate cost savings. The Court acknowledges that the motorcycle is also very important to Mr. Jacoby. However, that is not enough to justify the motorcycle loan payment as a reasonable necessity here. Debtors still retain two vehicles in addition to the motorcycle. The motorcycle is not a year-round vehicle and simply is not a practical travel option during the winter months. The other vehicles retained by debtors likely will need to be used during that period—including the pickup that is not currently running.

The Court notes that the motorcycle expense is not reasonable — and there is little need to review this particular case for good faith. To the extent relevant here, the good faith problem is reflected in keeping a non-essential item and paying that debt, while discharging the debts of many other creditors.

With all that said, the question of whether a loan payment for a vehicle or other piece of property is an "amount reasonably necessary to be expended" or proposed in good faith remains an inherently fact-intensive question. Under these facts, the Court concludes the motorcycle loan payment is not reasonably necessary. This is not to say a debtor could never retain a motorcycle under a Chapter 13 plan that pays less than 100%. It is conceivable a debtor could show such a dramatic

15

reduction in other expenses that would otherwise be reasonable — and dedicate those funds to paying creditors — that retaining the motorcycle under such a lean budget would be allowed. See e.g., In re Williams, No. 11-00323, (Bankr. N.D. Iowa, Feb. 23, 2011) (allowing reaffirmation on Harley Davidson motorcycle loan with minimal payment remaining and where debtors shown they had undertaken extreme cost-cutting measures — like living with Mrs. Williams' mother). That is not the case here. The objection to confirmation is sustained.

**WHEREFORE,** the U.S. Trustee's Objection and the Chapter 13 Trustee's Objection to Confirmation of Plan are SUSTAINED;

**FURTHER,** Debtors shall submit an amended Plan consistent with the conclusions above within 30 days of the entry of this Order.

Dated and entered:

July 21, 2011

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE